OPINION OF THE COURT
 

 Wachtler, J.
 

 In an action by an engineering firm to recover money allegedly owed for work done on a municipal contract the city asserted the Statute of Limitations (CPLR 213, subd 2) as a defense. The Supreme Court granted plaintiff’s motion to dismiss the defense and denied the city’s cross motion for summary judgment holding that the action was timely because it was brought within the period specified in the contract. The Appellate Division affirmed and granted the city leave to appeal on a certified question.
 
 *
 

 In 1967 the plaintiff John J. Kassner & Co., a professional engineering corporation, entered into a contract with the City of New York to arrange the relocation of all utility facilities at the site of the proposed new police headquarters in Manhattan. The contract, and a later supplemental agreement, provided for a lump sum payment of approximately $200,000 to be paid to the plaintiff in percentage installments as the work progressed "subject to audit and revision by the Comp
 
 *548
 
 troller” of the city. The agreement also provides that "No action shall be * * * maintained against the City upon any claim based upon this contract or arising out of this contract * * * unless such action shall be commenced within six (6) months after the date of filing in the office of the Comptroller of the City of the certificate for the final payment hereunder * * * None of the provisions of Article 2 of the Civil Practice Laws and Rules shall apply to any action against the City arising out of this contract.”
 

 On December 13, 1967 plaintiff submitted an itemized statement indicating that it had completed its work and claiming that there was a balance due of $39,523.69. Upon audit, however, the comptroller disallowed $38,423.69 claimed for "technical services” and only authorized a final payment of $1,100. The record does not indicate the date the plaintiff was informed of the comptroller’s decision. It is evident though that the plaintiff was aware of the results of the audit by July 1, 1968 when it sent a letter of protest demanding payment of the full amount.
 

 For over six years the plaintiff did nothing further to collect any part of the final payment. Then, on September 19, 1974, the plaintiff submitted a requisition for final payment of the undisputed balance of $1,100. A voucher for this amount was certified by the Department of Public Works, on September 27, 1974, and was forwarded to the comptroller. On November 8, 1974, a check for $1,100 was sent to the plaintiff and, on that same date, a certificate of final payment was filed in the comptroller’s office.
 

 Plaintiff commenced this action on April 18, 1975 by service of a summons and complaint seeking $39,523.69 as final payment due on the contract. By stipulation this amount was later reduced to $38,423.69 after plaintiff accepted the city’s check for $1,100 representing the undisputed balance. In its answer the city asserted the Statute of Limitations as a second affirmative defense. The plaintiff, relying on the limitations provision in the contract, moved to dismiss the defense and the city cross-moved for summary judgment on the defense.
 

 The city relied upon CPLR article 2 which provides that a suit on a contract must be commenced within six years (CPLR 213, subd 2) after the cause of action accrued (CPLR 203, subd [a]). The city urged that the plaintiff’s cause of action "accrued
 
 *549
 
 no later than July 1, 1968” because the "Plaintiff was fully aware of the amount and nature of its claim as of July 1, 1968, and was enabled to bring its action at any time thereafter.” The city also argued that the provision in the contract requiring the plaintiff to commence its action within six months of the filing of the certificate of final payment was inapplicable because it was intended to shorten the statutory period and not to extend it and, in any event, could not have the effect of extending the statutory period since the city has "no power to waive * * * the statute of limitations” (General City Law, § 20, subd 5).
 

 The plaintiff on the other hand urged that the contract was controlling; that under the agreement the cause of action did not accrue until the certificate of final payment had been filed and that the suit commenced within six months of that date was timely under the contract. The plaintiff also argued that the contractual limitations provision did not violate the General City Law (§ 20, subd 5) because the city "has not waived the statute [of limitations], but has * * * selected the agreed event or contingency on which the cause of action would accrue and. the statute would start to run.”
 

 The Supreme Court concluded that the contractual limitations provision was controlling. The court stated: "While it may appear that the plaintiff’s cause of action here accrued on July 7, 1968, the parties contracted for the statute to run from the 'date of filing in the office of the Comptroller of the City of the certificate for the final payment hereunder . . .’ And the agreement also provided that none of the provisions of Article 2 of the CPLR 'shall apply to any action against the city arising out of this contract.’ The City entered into a binding agreement and it may not now use the CPLR as a shield against the provisions of the contract. Under the terms of the contract, the plaintiff has timely commenced the action even if it would otherwise have been barred by the CPLR.” Accordingly the court granted the plaintiff’s motion to dismiss the second affirmative defense and denied the city’s cross motion for summary judgment dismissing the complaint as untimely under the Statute of Limitations. The Appellate Division affirmed without opinion.
 

 Two questions are presented by the appeal: (1) when did the cause of action accrue within the meaning of the Statute of Limitations, and (2) can a contractual limitations clause, which begins to run at a later date than the time of accrual
 
 *550
 
 under the statute, effectively extend the Statute of Limitations in an action on the contract.
 

 In contract cases, the cause of action accrues and the Statute of Limitations begins to run from the time of the breach
 
 (Edlux Constr. Corp. v State of New York,
 
 252 App Div 373, affd 277 NY 635;
 
 Victorson v Bock Laundry,
 
 37 NY2d 394, 403; 6 Williston, Contracts [rev ed], § 2004, p 5641). And, as a general rule, when the right to final payment is subject to a condition, the obligation to pay arises and the cause of action accrues, only when the condition has been fulfilled (36 NY Jur, Limitations and Laches, § 61;
 
 Nolan v Whitney,
 
 88 NY 649; Simpson, Contracts, § 112). In this case, however, the contract does not state that the plaintiff’s right to final payment is conditioned upon the filing of a certificate of final payment. On the contrary, the contract provides that the plaintiff is entitled to final payment when it has completed its work to the satisfaction of the Department of Public Works, subject only to an audit by the comptroller. Thus the plaintiff’s right to final payment and the city’s obligation to pay were conditioned upon completion of the audit
 
 (City of New York v State of New York,
 
 40 NY2d 659, 668). But once the audit was completed and the plaintiff was informed of the results, the cause of action accrued
 
 (City of New York v State of New York, supra,
 
 p 668). The breach, if any, occurred at this point because the comptroller — the only official responsible and specifically designated in the contract to authorize payment on behalf of the city — unequivocally refused to pay the full amount demanded and allegedly due on the contract. Therefore the cause of action for breach of contract accrued, within the meaning of the Statute of Limitations, no later than July 1, 1968.
 

 The limitations provision contained in the contract cannot serve, in this case, to extend the statutory period. Although the Statute of Limitations is generally viewed as a personal defense "to afford protection to defendants against defending stale claims”, it also expresses a societal interest or public policy "of giving repose to human affairs”
 
 (Flanagan v Mt. Eden Gen. Hosp.,
 
 24 NY2d 427, 429;
 
 Schwartz v Hayden Chem. Co.,
 
 12 NY2d 212; see, also, Weinstein-Korn-Miller, NY Civ Prac, par 201.01). Because of the combined private and public interests involved, individual parties are not entirely free to waive or modify the statutory defense.
 

 The parties may cut back on the Statute of Limita
 
 *551
 
 tions by agreeing that any suit must be commenced within a shorter period than is prescribed by law. Such an agreement does not conflict with public policy but, in fact, "more effectively secures the end sought to be attained by the statute of limitations”
 
 (Ripley v Aetna Ins. Co.,
 
 30 NY 136, 163). Thus an agreement which modifies the Statute of Limitations by specifying a shorter, but reasonable, period within which to commence an action is enforceable
 
 (Sapinkopf v Cunard S.S. Co.,
 
 254 NY 111) provided it is in writing (CPLR 201).
 

 But the power of the parties to make enforceable agreements which would extend the Statute of Limitations is, of course, more restricted. "The public policy represented by the statute of limitations becomes pertinent where the contract not to plead the statute is in form or effect a contract to extend the period as provided by statute
 
 or to postpone the time from which the period of limitation is to be computed.
 
 ” (1961 Report of NY Law Rev Comm, pp 97, 98, emphasis added.) The validity of this type of agreement depends initially on the time at which it was made.
 

 If the agreement to "waive” or extend the Statute of Limitations is made at the inception of liability it is unenforceable because a party cannot "in advance, make a valid promise that a statute founded in public policy shall be inoperative”
 
 (Shapley v Abbott,
 
 42 NY 443, 452;
 
 Croker v Ireland,
 
 235 App Div 760;
 
 Pine v Okoniewski,
 
 256 App Div 519; cf.
 
 Wood Co. v Horgan,
 
 .291 NY 422, 426; see, also, Simpson, Contracts, § 41, pp 128-129). Of course at that stage there is a greater likelihood that a "waiver” or extension of the defense, as part of the initial contract or obligation, was the result of ignorance, improvidence, an unequal bargaining position or was simply unintended.
 

 But if the agreement is made after the cause of action has accrued the Legislature has provided that it may be enforceable under certain circumstances. The controlling statute (General Obligations Law, § 17-103, subd 1) is applicable only to actions arising out of a contract and requires that the agreement or promise "to waive, to extend, or not to plead the statute of limitation” be in writing and signed by the promisor "after the accrual of the cause of action”. If these requirements are met the agreement or promise has the effect of renewing the Statute of Limitations for the applicable period, unless a shorter period is specified. The statute, it should be noted, is exclusive (see General Obligations Law, § 17-103,
 
 *552
 
 subd 3). Thus extension agreements made prior to the accrual of the cause of action continue to have "no effect” (General Obligations Law, § 17-103, subd 3).
 

 An agreement to extend the Statute of Limitations is not truly a waiver unless it is made after the statutory period has run
 
 (Shapley v Abbott, supra,
 
 p 447). Thus, as a general rule a party who has not raised the Statute of Limitations as a defense in the answer or by a motion to dismiss is held to have waived it (see Weinstein-Korn-Miller, NY Civ Prac, par 201.11). A city, as noted, lacks the power to waive the Statute of Limitations (General City Law, § 20, subd 5;
 
 Matter of City of New York [Elm St],
 
 239 NY 220) but is not otherwise precluded from granting an extension. In New York City, for instance, the comptroller is expressly authorized to agree to an extension, although under circumstances and terms generally more restrictive than would otherwise be permitted by section 17-103 of the General Obligations Law (see Administrative Code of City of New York, § 93d-3.1).
 

 The contractual limitations provision in this case is apparently a standard clause which, undoubtedly, was included to shorten the Statute of Limitations (see, e.g.,
 
 Soviero Bros, v City of New York,
 
 286 App Div 435 [Breitel, J.], affd 2 NY2d 924). To that extent, of course, it would be enforceable (CPLR 201). It is doubtful that the parties actually intended to postpone the accrual of the cause of action or anticipated that this provision would ever be employed to extend the expiration of the statutory period. In any event, since it was adopted at the inception of the contract and not after the cause of action had accrued, it may not serve to extend the Statute of Limitations (General Obligations Law, § 17-103, subds 1, 3).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the plaintiff’s motion to dismiss the second affirmative defense should be denied, and the defendant’s cross motion for summary judgment should be granted. The certified question should be answered in the negative.
 

 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Fuchsberg concur with Judge Wachtler.
 

 Order reversed, etc.